IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANNY TURNER,                                                    OPINION AND ORDER
                Petitioner,

                                                         14-cv-838-bbc
                                                           08-cr-22-bbc

      v.

UNITED STATES OF AMERICA,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Danny Turner has filed a timely petition to vacate his conviction under 28 U.S.C. § 2255, raising a number of challenges: (1) his court-appointed counsel was ineffective in a number of respects; (2) the United States withheld discovery material from the defense at trial; and (3) it knowingly allowed perjured testimony from an undercover officer concerning her ability to recognize petitioner. None of his challenges are reasons to overturn his conviction, either because they were decided against petitioner when his case was on appeal or because petitioner has no evidence to support them. Accordingly, his petition will be denied.

RECORD EVIDENCE

Petitioner was indicted in February 2008 on three counts of knowingly and intentionally distributing cocaine base. He went to trial on the charges and was found guilty

1

on all three.

The case against petitioner was based on three purchases of crack cocaine buys from him by undercover officer Kim Meyer, a member of the Dane County Narcotics and Gang Task Force. All three were hand-to-hand buys between Meyer and a man nicknamed "Face," whom she identified at trial as petitioner. Meyer testified that she first met Face on January 17, 2008, after she had placed a recorded call to a phone number known to be used by Face. Trial trans., dkt. #70, 1-A-36-37. A man had answered her call; she asked whether he was Face and whether she could come to see him. He told her to call back later. She then met with other officers, including Detective Kevin Hughes, to plan the purchase. At 2:30 pm, she called the number again; it was answered by the same man who had answered earlier. He told her to come to the parking lot of a particular apartment complex and then call him. Before leaving, she was shown a photograph of petitioner. She drove to the complex as directed, called Face and went to the door he identified. She was met there by a black male, whom she recognized from the photograph as petitioner. She handed him a hundred-dollar bill and received a substance-filled baggie. She testified that she had gotten a good look at the man and she identified petitioner at trial as the man who had sold her crack cocaine.

Meyer called the same number again on January 17; the man she knew as Face answered the phone and she made arrangements to meet him at a nearby PDQ to buy $100 worth of crack. Again, she identified defendant at trial as the man she had met. In February 2008, she met Face again and purchased another hundred dollars worth of crack cocaine from him. Id., tr. 1-A-48-54. After this purchase, another officer stopped Face for an

outstanding child support violation and recovered money from him, including five twenty-dollar bills he had received from Meyer that day.

Petitioner's counsel cross-examined officer Meyer about her knowledge of Face before she bought drugs from him. In an attempt to show that Meyer had never seen a photograph of him before the first purchase, counsel played an audio recording of Meyer's statements to Det. Hughes in the car while she was waiting to make a call to Face.

(Recording Begins)

>   Detective Hughes:  Hey, she's supposed to go to the address in uh, in the back, it sounds like he's gonna be back waiting for her. He said to call when she's pulling in the lot, so she said in about 10 –
>
>   Dispatch:  Copy.
>
>   Detective Hughes:  It's good that Pedro's right in there.
>
>   Officer Meyer: Yeah, so he's already set up.
>
>   Detective Hughes:  Cool.
>
>   Officer Meyer:  So we'll just give him a little time.
>
>   Detective Hughes:  Yeah, I like that.
>
>   Officer Meyer:  Yeah.
>
>   Detective Hughes:  For not knowing anything about this uh thing.
>
>   Officer Meyer: This Face? (unintelligible)
>
>   Detective Hughes:  Or any of it. How did Denise get on to this? God, she gets some good shit.
>
>   Officer Meyer:  She got, yeah. She's been doing it for so long.

      Detective Hughes: Well, I just –

(Recording Ends)

In addition, counsel brought out during cross-examination Meyer's failure to attach the jail photograph of petitioner to her report and her eight-day delay in writing her report after the first transaction.

      Each of Meyer's purchases was sent to the state crime lab for identification, where it was examined by a drug analyst, who wrote up a report identifying the substances as cocaine base. When the analyst was unable to testify at trial, her supervisor, the head of the drug identification unit within the state's Crime Laboratory Bureau, performed a peer review of her conclusion and took her place at trial. He testified that although he had not done any of the actual testing of the drug samples provided to the lab, he had reviewed the machine-generated data from the examinations conducted by the analyst and reached the same conclusion that she had, which was that each of the samples contained the same material, cocaine base. Trial trans., dkt. #60, at 49-51.

      Petitioner did not testify or call any witnesses. The jury found him guilty on all three counts. He was sentenced to concurrent terms of 210 months, the bottom of the advisory guideline range. He appealed, contending that his Sixth Amendment rights had been violated by the lack of opportunity to question the witness who had performed the drug examination and that the court had abused its discretion by admitting the drugs into evidence without the testing analyst's testimony about her examination. He did not raise any challenge to Officer Meyer's identification of him. His appeal was denied by the Court of Appeals for the Seventh

Circuit, but the United States Supreme Court granted his petition for a writ of certiorari, vacated the judgment and remanded the case to the court of appeals.  The Supreme Court directed the lower court to give the case further consideration in light of its previous decision in  Williams v. Illinois, 132 S. Ct. 2221 (2012), addressing the applicability of the Sixth Amendment's confrontation clause to scientific evidence that is not attested to by the scientist who did the actual testing.  (In Williams, the question was whether a witness could testify about a DNA match if he did not have personal knowledge of the way in which the testing company had produced the match from which the profile was produced and thus was unable to say whether it was based on vaginal swabs taken from the victim.)

In revisiting petitioner's appeal on remand from the Supreme Court, the court of appeals did not decide whether the substitution of the chemist's supervisor for the chemist at petitioner's trial was legally improper.  Instead, it ruled that even if it was, any error was harmless beyond a reasonable doubt in light of all the other evidence against petitioner. United States v. Turner, 709 F.3d 1187, 1190 (7th Cir. 2013).  Petitioner filed a petition for a writ of certiorari from the court of appeals' second decision in his case; the petition was denied on May 27, 2014.  He filed this petition on November 26, 2014.

## OPINION

### A. Counsel's Alleged Ineffectiveness

Petitioner did not raise any claims about the alleged ineffectiveness of his trial counsel when he took a direct appeal from his conviction, which was appropriate.  The issue of

5

ineffectiveness is almost always one for factual development of matters that would not be apparent from the written record. Massaro v. United States, 538 U.S. 500, 504 (2003) ("in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" because trial record is rarely developed for object of litigating claim of ineffectiveness and is often incomplete or inadequate for purpose.). Although this case is an exception to the general rule, because it does not require any factual development outside the record, it is still properly before the court.

Petitioner alleges that his counsel was ineffective in a number of ways: he did not prepare for trial; he did not ask the court to enforce its order for the production of expert witness reports; he did not object to the government's request to introduce the opinion of the examining analyst through her supervisor when she was unable to appear at trial; and he failed to impeach the undercover officer on her identification of petitioner.

The test for ineffectiveness is set out in Strickland v. Washington, 466 U.S. 668, 694 (1984). Under this test, a person challenging the effectiveness of his counsel must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In this case, the record refutes the first allegation of lack of preparation. Counsel was prepared to defend his client and he did so vigorously. His failure to win an acquittal for petitioner was not the result of anything he failed to do or that he omitted, but of the strength of the evidence against petitioner.

Petitioner's second allegation is that his counsel failed to object to the admission of the expert testimony on the ground that the expert had not done the actual drug testing himself, but his allegation is foreclosed by the record, which shows that counsel did object. Counsel moved in limine, dkt. #37, to preclude the government from calling the supervisor, raising both a procedural argument (the date for disclosing experts had passed) and a substantive one (it was nothing but an attempt to introduce into evidence impermissible hearsay from a witness who lacked firsthand knowledge of the subject of his testimony). Once the motion had been ruled upon prior to trial, it was not necessary for counsel to raise the issue again in order to preserve it.

Petitioner's third allegation is that his counsel did not ask the court to enforce its order for the production of expert witness reports, but it is not clear whether counsel had any reason to make such a request. The government says in its brief, dkt. #100, at 12, that before trial, it provided defense counsel the bases and reasons for the expert opinion on drug identification. Petitioner attacks this statement, saying that the information provided was no more than a page and did not include the underlying notes and data. This allegation raise questions of fact outside the record, requiring an evidentiary hearing, were there any reason to pursue it. In light of the court of appeals' decision in this case, however, the issue is no longer open.

After this case was remanded by the Supreme Court, the Court of Appeals for the Seventh Circuit held that petitioner would not be entitled to a reversal of his conviction even if was a denial of his rights under the confrontation clause for the supervisor to testify in place

7

of the analyst about her testing of the drugs. As the court of appeals noted, "considerable evidence beyond the objectionable portions of [the supervisor's] testimony indicat[ed] that the substance that Turner distributed to Officer Meyer was crack cocaine, a form of cocaine base." Turner, 709 F.3d at 1197 ("[A]ny Confrontation Clause error in allowing [the supervisor] to testify (briefly) as to the process [the analyst] followed and the conclusion she reached in examining the substances was entirely harmless; it is clear that the jury would have rendered the same verdict even if the harmless error had not occurred." Id. at 1197. This is the law of the case. It is not open to reconsideration by this court.

Petitioner's only remaining claim is that counsel failed to impeach the undercover officer on her identification of petitioner, but Strickland makes it clear that a showing of constitutional ineffectiveness requires more than a showing that counsel did not succeed in every effort he made. Instead, a dissatisfied defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 669. It is not at all clear why petitioner thinks it is relevant when or if Meyer saw a photograph of petitioner. After all, she met with him in person on three separate occasions and was able to identify him at trial. In any event, petitioner cannot prevail on his claim that his counsel was ineffective on this issue. He admits that his counsel tried to impeach Meyer by playing the recording of her conversation with Hughes to the jury and by asking her about the delay between the events and when she prepared her report and her failure to attach the alleged photograph to the report. It was not because of any lack of effort by counsel that the jury did not find from the recording or

8

Meyer's delay in preparing her report that she was not telling the truth about what she knew about Face before she met him. I conclude that petitioner has failed to show that his counsel was ineffective in any respect that would warrant a new trial.

## B. Alleged Governmental Misconduct

Petitioner has two contentions about alleged misconduct on the part of the government, both of which overlap to some extent his contentions about his lawyer's conduct. The government argues that petitioner should have raised these claims on appeal and, because he did not, the court should not entertain them at this time. The problem with this argument is that both claims rest on evidence outside the record, which means that they could not be raised on direct appeal. Therefore, I will consider them at this time.

The first contention is that the government knowingly withheld the basic information about the drug analysis. As explained above, petitioner has not shown that any such information existed and that, if it did, the government withheld it from his counsel intentionally. It is well established that mere unsupported assertions do not warrant a hearing; a petitioner must file a detailed and specific affidavit showing he has actual proof of allegations. Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996); see also Kafo v. United States, 467 F.3d 1060, 1067 (7th Cir. 2006) (same); Galbraith v. United States, 313 F.3d 1001, 1009-10 (7th Cir. 2002)(affidavit is threshold requirement; "its absence precludes the necessity of a hearing"). Moreover, as the court of appeals found, even if the testimony on drug analysis was improper in any respect, any error was harmless in light of the all the

9

lay evidence demonstrating that the substance Meyer bought from petitioner was crack cocaine, otherwise known as base cocaine. The court of appeals added that petitioner's defense at trial "in no way hinged on the notion that he distributed something other than crack cocaine to Meyer." Turner, 709 F.3d at 1197.

Petitioner's second contention is that the government knowingly allowed perjured testimony from the undercover officer concerning her ability to recognize petitioner. This claim needs little discussion. Defendant has not submitted a detailed and specific affidavit to support his claim and none of the record evidence shows either that Meyer's testimony was perjury or that, if it was, the government knew it and allowed her to take the stand anyway.

In short, petitioner has not shown that his conviction is illegal in any respect. Accordingly, his motion for post conviction relief will be denied.

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when entering a final order adverse to a defendant. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). In this case, defendant has not made the necessary showing, so no certificate will issue. Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue,

it is not necessary to do so in this case because the question is not a close one. Petitioner is free to seek a certificate of appealability from the court of appeals under Fed. R. App. P. 22, but that court will not consider her request unless he first files a notice of appeal in this court and pays the filing fee for the appeal or obtains leave to proceed in forma pauperis.

ORDER

IT IS ORDERED that petitioner Danny Turner's motion for post conviction relief under 28 U.S.C. § 2255 is DENIED. No certificate of appealability shall issue. Defendant may seek a certificate from the court of appeals under Fed. R. App. P. 22, as explained above.

Entered this 25th day of March, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge